JOHN HOLLAND, Plaintiff in Error, *v.* KIBBEE AND LATHROP, Defendants in Error.

### ERROR TO MORGAN.

A. sold property to B. for $3,500.00, with an agreement that A. was to receive one-half of the excess beyond this sum, for which B. should afterwards sell the property ; B. contracted to sell the property to C. for $3,700.00, but before the first payment fell due, C. sold the property to D. for $5,075.00 ; B. then interfered to prevent D. from paying the purchase money to C., but received it himhimself and conveyed directly to D. In order to effect this arrangement, B. paid $500.00 to C. and $50.00 to D. Held, that if A. seeks to recover one-half of the profit arising from this arrangement, he must credit B. with the $550.00 paid to effect it.

THIS was a bill in chancery, filed in the Morgan Circuit Court, WOODSON, Judge, by defendants in error, against plaintiff in error, stating that on the 18th of June, 1852, they conveyed to Holland one-half of a lot in Jacksonville for $1,000 cash,

and his two notes for $1,250 each, at one and two years date, with annual interest; and if Holland should sell the property afterwards at a profit, deducting the costs of improvements made by him, he was to pay them half the profits; and that he spent in improvements upon the property, about $160. Deed was recorded without recording the agreement; and that deed was in possession of Holland, and not subject to their control. That he, or those claiming under him, occupied the property until the last of 1856, or first of 1857, when he *pretended* to sell the property to Doty and Anthony for a feigned consideration; that at the time of the pretended sale, no money was paid and no notes given; that first payment was to have been made on or before 1st March, 1857. That on 24th February, 1857, Doty and Anthony caused the property to be sold at auction for one-third cash, and two-thirds at one and two years time, with ten per cent. interest; and that on such terms the property was sold to William Hamilton for $5,075; that Holland never executed deed to Doty and Anthony, nor did he complete his pretended sale to Doty and Anthony, but it was somehow cancelled by the parties, and Holland and wife executed deed to Hamilton for consideration of $3,666.66; that Hamilton made two of his notes for deferred payments to Holland, and not to Doty and Anthony, for $1,333.33 each, and a lien was reserved to secure payment of notes; that another note was executed by Hamilton for a part of consideration of sale to Doty and Anthony, and by them transferred to Holland; that notes given by him to complainants had been paid; that the sale of Holland to Doty and Anthony, was merely colorable, and not in good faith, but was intended by Holland to conceal the true consideration, and to avoid rightful accounting to complainants; and that consideration expressed in deed from Holland to Hamilton, is not truly stated; and that the execution of one of said notes by Hamilton to Doty and Anthony, and by them endorsed to Holland, was a mere contract of Holland, and all done at his instance for fraudulent concealment of the true consideration of said sale, and to cheat and defraud complainants. They charge that all the consideration of the auction sale passed to Holland, and not to Doty and Anthony, or if anything was paid to them, it was a mere *bonus*, and was very small, and for their time and trouble in carrying out this arrangement; and that no part of the sum of $5,075, paid and to be paid by Hamilton, was paid to Doty and Anthony, but that all the money paid by him was paid to Holland. Complainants charge that they are entitled to account of one-half of profits of sale to Hamilton, deducting $3,665; that profits are $1,410, and that they are entitled to one-half, and that Holland

14

failed and refused to account. Prayer for process, and that he answer on oath, and be held to account for half sale to Hamilton, deducting $3,500, and what Holland expended in making improvements ; and that he be decreed to pay same, with interest from the date the same was received ; and for general relief.

Holland answered 19th October, 1857, admitting his purchase of complainants, and says that he contracted with them to pay them half the profits of sale, within two years of his purchase, deducting what he paid, and improvements he might make ; that he made improvements to amount of $233.15 ; that there was on the margin of the deed of complainants to respondent, the contract charged by them, except that the conveyancer omitted to state the limitation of two years. Denies that he made pretended sale to Doty and Anthony, or any other person, for feigned consideration. Says that sale to Doty and Anthony was for good and valuable consideration, and in good faith, and denies that there was any money or notes taken or given in the sale. Admits auction sale to Hamilton for $5,075, and that he, respondent, did not convey property to Doty and Anthony. Says he executed them a bond for a deed, in the penalty of five hundred dollars, to convey to them, if they paid one thousand dollars, first installment, by 1st March, 1857. That Doty and Anthony represented themselves as unable to comply with terms of sale to them, and requested that he, respondent, would take, in lieu thereof, their claim against Hamilton as purchaser, and he took said claim, paying them five hundred dollars in cash, and it was agreed, as part of the arrangement, that respondent, to save trouble of two conveyances, should convey directly to Hamilton, and that notes of Hamilton should be made directly to respondent. Denies that any note was made by Hamilton to Doty and Anthony, and that any note of Hamilton was assigned by them to respondent. Says that the consideration of his deed to Hamilton was because of the two sales, and that he, respondent, had paid Doty and Anthony five hundred dollars, as aforesaid, and he, respondent, did not wish to charge himself a larger consideration in his deed to Hamilton, than he, respondent, had contracted for with Doty and Anthony. Denies all fraud, and says transaction referred to in the bill, was commenced and completed in good faith.

Replication filed.

*Doty* testified as follows : We, Doty and Anthony, purchased house and lot of Holland about last of 1856 ; there was a written contract recorded at Jacksonville ; consideration of contract, $3,700 ; first payment 1st March, 1857, $1,233.33 ; $1,233.33, 1st March, 1858 ; and $1,233.33, 1st March, 1859 ; warranty deed to be delivered at last payment. We completed

the contract and made our notes for payments.   Besides above, we made a note of three hundred dollars to Holland; that he did not want Kibbee and Lathrop to find out the bargain that they were entitled to one-half of it, and that he wanted whole profit to himself.   Saw written contract on margin of deed, to effect that Holland should pay to Kibbee and Lathrop half of what he got, more than he paid them for property.   Our contract with Holland was to be recorded; don't know whether it was or not.   We sold property to William Hamilton for $5,150, he to make payments corresponding, as far as they went, with ours to Holland; sale made for benefit of myself and Anthony; title was in Holland, who made deed to Hamilton, who bound himself to pay purchase money to Holland.   Anthony and myself sold property at auction to meet the demand that Holland had against us.   I heard that Holland forfeited his contract—that it was cancelled—and that he paid us five hundred dollars. This forfeit was to relieve him from the contract made with us. He would be making more money in deeding the property to Hamilton than to us.   Before sale to Hamilton, I heard from Holland that he made something like the three hundred dollars that was separate and apart from the contract.   He said he wanted this concealed from Kibbee and Lathrop; that if they found it out, they would demand of him one-half of it.   We had no other interest in the property than the contract above spoken of, on which we paid nothing.   Don't think that the transaction between Holland and Hamilton was to avoid the trouble of double conveyancing, and did not understand that Holland gave us five hundred dollars for our trade with Hamilton.   The five hundred dollars was paid after our contract with Holland.   I know nothing in relation to this, only what I have been told. Know of no agreement to defraud Kibbee and Lathrop, except as to the concealment of the three hundred dollar note.   Holland told me he was under written contract to Kibbee and Lathrop to pay them one-half of the money received over and above what he paid them.   Don't remember hearing of any limitation of time, or as to any mistake of conveyancer.   The sale of the property by Holland to me was in good faith.   It was after the auction sale that the five hundred dollars was paid by Holland. We took that way of meeting the payments with him.   Can't say certainly whether it was a forfeit on the contract with us, or whether it was a bonus on the contract with Hamilton.   I was not there.   It was my understanding that it was regarded by the parties as a forfeit on the part of Holland in his contract with us.

*Anthony* testifies substantially as Doty, except that he states that the property was sold to Hamilton for $5,075.

Deposition of *William Hamilton* states, that he bought property at auction sale of Doty and Anthony for $5,075; terms, one-third cash, and other two-thirds at one and two years, equal installments, from 1st March, 1857, with ten per cent. interest. Holland resided on premises at time of sale; witness told him he would like to buy, if he could get time on first payment; Holland told witness that most of the first payment was coming to him, if sale took place from Doty; witness told Holland he wanted time till last of April or middle of May; he assented, and sale took place as above. Question being made as to time of possession, Doty said 1st March, 1857; Holland objected, saying that he was to have possession until last of March or 1st of April; Holland was excited; witness told him as he had given time on first payment, he, (Holland,) should have upper part of house until he removed his family to Minnesota; Holland told witness not to advance money to Doty to enable him to make first payment to Holland; that there was a bond for five hundred dollars which he would forfeit to Doty, and pay witness half of $575; witness told Holland that he was not then able to advance anything to Doty; Holland afterwards stated to witness that bond was so drawn that he could not forfeit it, and insisted that witness should not advance any money to Doty; that he thought he would be able to bring him to terms; that he had heard that Doty had been trying to borrow money, and did not succeed. Holland afterwards told witness that he had made arrangements with Doty, and had made a small shave of one hundred dollars, of which he gave me fifty dollars. Holland then drew up six notes, three payable to himself; of the two first, one was for $1,333.33, payable to himself, the other to Doty and Anthony, on the 1st March, for $358—two of other four made payable to Holland, each for $1,333.33, due respectively 1st March, 1858, and 1st March, 1859; the remaining two to Doty and Anthony, for $358 each, time as last mentioned. Holland afterwards stated to me that he had bought the three $358 notes, and that he had made a good shave on them, This transaction took place between witness and Holland, Doty and Anthony not being present. Some two or three weeks afterwards, Doty told me that Holland had forfeited his bond and paid him five hundred dollars. The two first notes, viz.: one for $1,333.33 to Holland, and one of $358 to Doty and Anthony, I paid to Holland shortly before he left. The price that witness bid for property was $5,075; didn't recollect consideration expressed in deed. All of notes that witness had paid, were paid to Holland, and two of notes were not yet due, and were unpaid. The day before Holland left for Minnesota he told witness that half of what property brought over what

was paid Kibbee for it (the value of improvements made by Holland to be allowed him) was to go to Kibbee. Witness thinks that improvements were valued at about $160 or $165. When Holland spoke of Kibbee, witness understood him to refer to Kibbee and Lathrop, and when of Doty, witness understood him to refer to Doty and Anthony. Holland paid me the fifty dollars when I paid him first payment. Don't recollect whether Holland handed me the fifty dollars, or I reserved that sum when I paid him.

There was a decree on foregoing pleadings and proofs, " that the complainants in this case are entitled to have of said defendant the account of the profits realized upon the sale of the premises described in complainants' bill; and it appearing to the court that the said profits amount to the sum of $1,420," and that Holland pay half that sum, and six per cent. interest from 24th February, 1857, to wit: $756.06, within sixty days, with six per cent. interest, and in default thereof that execution issue, and that defendant pay costs of suit. And complainant brings the case to this court by writ of error—assigning for errors,

1st. That decree ought not to have been rendered against Holland for any sum.

2nd. That decree was rendered against him for too much by some $360.

D. A. AND T. W. SMITH, for Plaintiff in Error.

I. L. MORRISON, and J. W. STRONG, for Defendants in Error.

CATON, C. J. A careful examination of this record will show that this decree was unquestionably for too much. The complainants were entitled to one-half of the profits, which the defendant should make on a resale of the premises. He paid for the premises, to the complainants, three thousand five hundred dollars, and then agreed to sell them to Doty and Anthony for three thousand and seven hundred dollars, and gave them a bond for a deed, upon their payment of the purchase money. In order to meet these payments, they agreed to sell the same premises to Hamilton, for five thousand and seventy-five dollars. By a system of management, by no means to be commended, the defendant, in order to realize as much of this enhanced value of the premises as possible, induced Hamilton to abandon the purchase from Doty and Anthony, and refuse to pay them the purchase money, whereby they were prevented from meeting their payments to the defendant, thus enabling him to insist upon a forfeiture of their purchase, and in order

to secure acquiescence in this forfeiture he paid them five hundred dollars; and in order to induce Hamilton to co-operate with him in this ingenious scheme, and to take the premises of the defendant at the price which Hamilton had agreed to pay Doty and Anthony, the defendant gave Hamilton fifty dollars. Thus by an expenditure of five hundred and fifty dollars, he was enabled to realize for the premises five thousand and seventy-five dollars, instead of three thousand and seven hundred dollars. Now, so long as the complainants are seeking to enjoy the fruits of this piece of management and finesse by claiming one-half of the profits arising from the sale to Hamilton, they cannot be permitted to repudiate the means by which he was enabled to make that sale. It cost him five hundred and fifty dollars to affect that arrangement, and we think it quite cheap enough. And they should not complain at being required to bear their proportion of this expenditure.

The evidence also shows, that the defendant had put upon the premises improvements to the value of one hundred and sixty dollars, which we must assume increased their value to that amount, and consequently increased the price for which they were sold by the amount of the value of the improvements; so that, that amount should be taken from the amount of the sale, before we can arrive at the profits to be divided. The enjoyment of the premises by the defendant may be fairly set off against the interest of the original purchase money; so that neither of these items need be taken into the account. Upon the principles above laid down, the account should be stated by charging the defendant with the amount of the sale to Hamilton, $5,075, and by crediting him with the original purchase money from Kibbee and Lathrop, $3,500; the $500 paid to Doty and Anthony, to get them to release their purchase of the premises, the fifty dollars paid to Hamilton, to secure his co-operation in the defendant's scheme to get the benefit of the sale to him, and the $160, the value of the improvements, leaving to balance, $865, which is the true amount of profits; for one-half of which, with interest, the complainants are entitled to recover. The decree is reversed and the suit remanded, with directions to enter a decree accordingly.

The judgment of this court heretofore entered in this cause, is reconsidered, and the decree of the Circuit Court is reversed, and the suit remanded, with instructions to enter a decree in accordance with the opinion of this court.

*Decree reversed.*